**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No. 1:26-cv-00717-DAB-JGM**

| | |
|---|---|
| DR. ROBERT D. FREEDLAND, DDS, P.A., *on behalf of itself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>ELAVON, Inc. and PAYCHEX, Inc.,<br><br>Defendants. | **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY ON ARBITRABILITY FOR A STAY** |

Pursuant to Federal Rule of Civil Procedure 26(d), Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, and this Court's inherent authority to manage its docket, Plaintiff Dr. Robert D. Freedland, DDS, P.A., respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for Leave to Conduct Limited Discovery on Arbitrability and for Stay. This memorandum is being filed contemporaneously filed Plaintiff's Memorandum of Law in Opposition to Defendants' Joint Motion to Compel Arbitration and Stay Litigation. Plaintiff seeks leave to take the limited, targeted discovery set forth in the proposed Requests for Production, attached hereto as Exhibits G and I.

## I. INTRODUCTION

Defendants ask this Court to compel arbitration based on a chain of documents and notices spanning nearly a decade: a 2017 Company Application incorporating Elavon's Terms of Service by a bare, non-interactive text reference; a 2019 notice buried in a monthly billing statement that purported to modify that agreement to add an arbitration clause; and a 2023 DocuSign application that was purportedly signed within four minutes of being opened and that references a Terms of

Service hosted at a dynamic, non-versioned URL.[1] As set forth more fully in Plaintiff's Opposition, the evidence Defendants have proffered does not establish that Plaintiff ever received, saw, or meaningfully assented to any of these documents, and Defendants' own pre-suit correspondence shows that even Elavon's counsel could not consistently identify which version of its Terms of Service governs this dispute. These are disputed, threshold factual questions that Fourth Circuit law holds must be resolved by the Court, with the benefit of discovery if necessary, before arbitration may be compelled.

In short, Plaintiff seeks leave to take limited, targeted discovery directed solely to these threshold formation questions, not to the merits of his underlying claims, before the Court rules on Defendants' motion to compel. That discovery is narrowly bounded to the documents, notices, and version-control records Defendants' motion puts at issue, and can be completed on an expedited schedule set forth below. Plaintiff further requests a corresponding stay of merits discovery and responsive pleading deadlines pending resolution of arbitrability, so that the Court decides its own authority to compel arbitration on a complete record rather than the incomplete one Defendants have presented. Proceeding in this order avoids the risk of deciding a threshold jurisdictional question, and forcing Plaintiff to arbitrate, before the factual basis for that decision actually exists.

Plaintiff sought this discovery informally before bringing its motion. By letter dated August 10, 2026, Plaintiff requested that Defendants agree to limited discovery on the threshold question of arbitrability. Jackson Decl. ¶ 4, Ex. C. Defendants refused the request by letter dated August 13, 2026, disputing that any "factual gap" exists. Jackson Decl. ¶ 5, Ex. D. Defendants further stated they would oppose any motion seeking discovery or a stay of briefing. Plaintiff accordingly brings its motion because the informal conferral process has been exhausted.

[1] "URL" refers to "uniform resource locator," more commonly known as a web address.

## II. THE GOVERNING STANDARD ENTITLES PLAINTIFF TO DISCOVERY BEFORE THE COURT RULES ON ARBITRABILITY.

Because the making of an arbitration agreement is genuinely in dispute here, the applicable standard of review is the same one that governs a motion for summary judgment under the Federal Rules of Civil Procedure. "[A] district court should employ a standard similar to that trial courts use in resolving summary judgment motions under Fed. R. Civ. P. 56(c)." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 (4th Cir. 2012) (internal quotation marks omitted). Under that standard, the party seeking to compel arbitration bears the burden of demonstrating, on a record construed in the light most favorable to the party opposing arbitration, that no genuine dispute of material fact exists as to formation; if a genuine dispute exists, the motion cannot be resolved summarily and, as here, discovery directed to that dispute is appropriate before any such motion is decided. *Id.*; *see also Chorley v. Dickey's Barbecue Rests.*, 807 F.3d 553, 564. Because Defendants, as the parties moving to compel arbitration, bear that burden, Plaintiff need not conclusively disprove the existence of an agreement to arbitrate — he need only show, as under Rule 56, that a genuine dispute exists. As set forth above, Defendants have not carried that burden on the present record, and until they do, the disputed facts must be developed through discovery and, if they remain contested, resolved at trial rather than assumed away in Defendants' favor. This treatment is not merely persuasive; a district court may order discovery in aid of a dispute over threshold questions of arbitrability and then decide the questions on a standard akin to summary judgment. *Bates v. Lundy Motors, LLC*, No. 3:16CV133 (HEH-RCY), 2016 U.S. Dist. LEXIS 118126, at *4 (E.D. Va. Aug. 12, 2016). "The Fourth Circuit has held that "a district court can invoke Fed R. Civ. P. 81 (a) to use federal discovery rules to determine whether a dispute is arbitrable." *Id.* at *3 (citing *Application of Deiulemar Compagnia Di Navigazione S.P.A. v. M/V Allegra*, 198 F.3d 473, 483 (4th Cir. 1999)); *see* FED. R. CIV. P. 81(a)(6)(B); *accord Wilson-Cook*

*Med., Inc. v. Wilson*, 942 F.2d 247, 252 (4th Cir. 1991); *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011) (a motion to compel arbitration is treated as a motion for summary judgment when the formation or validity of the arbitration agreement is in dispute). Denying Plaintiff the discovery requested here before requiring it to respond further to Defendants' motion would repeat precisely the error that *Bates* and *Deiulemar* foreclose.

Moreover, if a genuine factual dispute as to formation cannot be resolved following discovery, the FAA does not permit the Court to resolve it on the papers alone — the question must be tried to a jury. 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."); *Davis v. Lendmark Fin. Servs., LLC*, 2016 U.S. Dist. LEXIS 31988, at *9–10 (W.D. Va. Mar. 11, 2016) (ordering jury trial on the formation issue where plaintiff denied seeing or agreeing to the arbitration term). The discovery Plaintiff seeks will allow the Court to make that determination on a complete record, rather than on the incomplete and disputed record Defendants' motion currently presents.

In refusing Plaintiff's informal request for the discovery sought here, counsel for Defendants took the position that "the need for discovery can nevertheless be revisited in arbitration by the arbitrator, if appropriate." Jackson Decl. ¶ 5, Ex. D. That position sidesteps the threshold issue of formation. Whether an arbitrator may ever hear this dispute depends entirely on whether a valid agreement to arbitrate exists in the first place, a question that is always a question for the court, not the arbitrator. *Granite Rock Co v. Int'l Bhd. Of Teamsters,* 561 U.S. 288, 299; see also *Roach v. Navient Sols* (D. Md. 2015), 165 F. Supp. 3d 345 349 (citing *Gregory v. Interstate/Johnson Lane Corp.*, 188 F.3d 501, 1999 U.S. App. LEXIS 28299, 1999 WL 674765, at *7 (4th Cir. August 31, 1999)). An arbitrator does not have authority to resolve the very question of whether he has authority.

## III. THE RECORD DEFENDANTS HAVE SUBMITTED IS RIDDLED WITH UNRESOLVED FACTUAL GAPS.

The specific gaps Plaintiff seeks to fill through discovery are narrow and are readily apparent in Defendants' own motion and exhibits. First, Defendants have produced no evidence establishing that the Terms of Service referenced in the 2017 Agreement were actually accessible at the referenced address when the application was signed; the reference itself is not a currently functioning hyperlink. Second, Defendants rely on a January 2019 billing-statement notice to establish a unilateral amendment adding an arbitration clause, but have produced no evidence regarding how such notices were formatted or distinguished from routine billing content, or whether they could reasonably have been seen by a merchant in Plaintiff's position. Third, Defendants' own pre-suit correspondence attached an October 2023 version of the Terms of Service to support arbitration, while their present Motion instead relies on a "March 2019" version containing a materially different arbitration provision, yet Defendants have produced no version-control records, server logs, or metadata establishing what the dynamic URL underlying the 2023 Agreement actually displayed on the date Plaintiff purportedly signed it. Fourth, Defendant Paychex's estoppel theory turns on the closeness of its relationship to the underlying agreement, a relationship Plaintiff disputes based on Paychex's own independent conduct. Under North Carolina law, a written contract may be modified or waived by conduct that naturally and justly leads the other party to believe the contract has been modified or waived, even where the contract purports to require modifications in writing, and even where it expressly denies individual representatives the authority to alter its terms. *See 42 East, LLC v. D.R. Horton, Inc.*, 218 N.C. App. 503, 511, 722 S.E.2d 1 (2012). Paychex representative Jenn Wellman's written assurance that Plaintiff would be "fully compliant" with "absolutely no fees" going forward is precisely this kind of conduct, and at minimum raises a genuine factual dispute as to waiver that discovery is needed to resolve.

## IV. THE REQUESTED DISCOVERY IS NARROWLY TAILORED AND APPROPRIATELY BOUNDED.

Rather than resolve a motion of this consequence on a record riddled with unexplained evidentiary gaps, gaps entirely within Defendants' control and knowledge, and not Plaintiff's, the Court should permit Plaintiff limited, targeted discovery into these threshold facts before ruling on arbitrability.

Defendants rely on the 2023 Company Application as their primary theory of formation. That document purports to incorporate 2019 Terms of Service by reference to a URL. Defendants have provided no evidence showing the link was valid in 2023. It could have been broken or dead, especially since Elavon regularly changes the document attached to the link and actually told Plaintiff's counsel that a different TOS governed the January 2023 agreement, see July 2025 letter from Elavon's counsel, Exhibit E. Without discovery, the existing documents produced by Defendants do not establish where the link led in 2017 or 2023 when Defendants contend the agreements were signed. The discovery Plaintiff seeks ask Defendants to produce an archived, version-controlled record of what was actually posted at Elavon's URLs during the relevant period.

The discovery Plaintiff seeks is not merits discovery; it is confined to the narrow factual questions Defendants' own motion puts in issue: what documents and notices actually reached or reasonably should have reached Plaintiff, in what form, and when; what the hyperlinked Terms of Service (if any) actually said at the times material to Defendants' theories; and what Defendants themselves contend constitutes the operative agreement. Courts routinely permit discovery of this scope before ruling on a motion to compel where, as here, the moving party's own papers rely on multiple, potentially inconsistent theories of formation spanning several years and documents. *See Blankenship v. Seventeenth St. Assocs., LLC*, No. 2:11-CV-01046, 2012 WL 10008266 (S.D.W. Va. 2012).This is precisely the line Fourth Circuit district courts have already drawn in this

context: While discovery aimed at "the arbitration proceeding itself" or at "proceedings on the merits before the arbitrators" is outside the Court's role, discovery aimed at the threshold question of formation is squarely within it, because that question is "undeniably 'an issue for judicial determination.'" *Bates*, 2016 WL 4224891, at *2–3 (quoting *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 671 (4th Cir. 2016), and *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012)) (granting motion to compel Rule 26(a)(1) disclosures because "limited discovery will aid in determination of this threshold issue"). Every item requested in Section V is directed to that threshold question — formation and notice — and none seeks discovery into the merits of Plaintiff's underlying claims or into how any eventual arbitration would be conducted.

## V. PROPOSED DISCOVERY

Because the threshold factual predicates of contract formation are squarely in dispute, this Court should defer ruling on Defendants' motion and grant Plaintiff leave to conduct narrow, targeted discovery on arbitrability. Pursuant to Section 4 of the Federal Arbitration Act and this Court's inherent authority to manage its docket, Plaintiff proposes the following discovery requests and the following expedited scheduling framework to govern the limited discovery phase:

Plaintiff's proposed Requests for Production are attached hereto as Exhibits G and I. Each document request is narrowly tailored to seek only information central to the issue of arbitrability:

**1. Competing arbitration agreements.** Paychex's own Services Agreement, if it contains a arbitration clause different from Elavon's TOS, raises an independent *Coinbase,* problem, where two agreements have conflicting dispute-resolution terms, the court, not an arbitrator, must decide which one governs. *See Coinbase, Inc. v. Suski,* 602 U.S. 143, 144 S. Ct 1186, 218 L. Ed. 2d 615 (2024). This is a threshold question, not a merits question, and potentially dispositive on its own.

**2. Paychex/Elavon ISO or reseller agreement.** Paychex's estoppel theory assumes it has authority to invoke Elavon's arbitration clause on Elavon's behalf. This request tests that assumption directly by seeking the actual document defining the scope of that relationship.

**3. All TOS versions, 2017–2023, with posting/supersession dates.** This is the crux of the "dynamic URL' problem, without version-control proof of what document lived at the referenced address on each signing date, Defendants can't show they incorporated a document that existed in that form at the time. Production will also show whether there is a missing 2021 TOS, which would arguably have been in effect when the January 2023 contract was generated (because Elavon usually made TOS revisions every two years, in the latter part of odd-numbered years). Clearly, if Defendants 2021 policies had no arbitration clause or a different one, that would be relevant to the motion to compel arbitration.

**4. URL version-control and IT logs, 2019–2023.** System-level records showing whether and when the URL's content changed without notice, supports the illusory-promise theory that Elavon could unilaterally alter what the "agreement" said after the fact.

**5. Internal communications about URL maintenance, 2021–2023.** Companion to Request 4, direct evidence (not just logs) that Elavon's own personnel knew they controlled and altered the URL's content.

**6. DocuSign audit trail for the 2023 signature.** Freedland purportedly signed four minutes after the document was opened, with no record of what he actually saw, if anything was at the link at all. The audit trail is the only way to establish what was rendered, clicked, or accessible in that window.

**7. Native, unaltered signed documents with full metadata.** Defendants have produced only reformatted printouts, raising an authentication problem under FRE 901. This forces production of the original files.

**8. Billing statements, narrowed to November 2018–March 2019 plus one comparator month from 2017 and one from 2021.** This tests whether the January 2019 arbitration notice was conspicuous as actually delivered, as opposed to buried within dozens of monthly statements. If most statements contained innocuous information in the "News for You" section that had no bearing on the contract, that bears on the efficacy of the notice.

**9. Specific AAA rules edition and proof of disclosure.** This tests whether any specific rule set was ever actually communicated to Freedland before he was allegedly bound to it, framed as a notice question, not a scope question, to avoid tension with the delegation argument in the Opposition.

**10. Communications about the TOS, arbitration terms, and any waiver or non-enforcement of those terms, including Paychex employees Wellman and Wind.** This request is tied specifically to arbitration-term disclosure and the waiver theory.

**Limited Discovery Period:** The parties shall have forty-five (45) days from the date of the Court's Order to complete document production strictly limited to the threshold issues of contract formation, notice delivery, the dynamic URL server histories, and the third-party estoppel arguments raised in the briefing.

**Targeted ESI and Document Production:** Defendants shall fully respond to Plaintiff's Requests for Production (attached as Exhibits G and I) within thirty (30) days of the Court's Order, specifically including the production of version-control data and server logs establishing what content was live at the dynamic URL endpoint on January 27, 2023.

**Supplemental Briefing Schedule:** Within twenty-one (21) days following the close of limited discovery, Plaintiff shall file a Supplemental Memorandum in Opposition to the Motion to Compel Arbitration incorporating the evidence developed. Defendants shall have fourteen (14) days thereafter to file a Supplemental Reply.

**Interim Stay:** All merits-based discovery, initial disclosures, and responsive pleading deadlines shall be stayed pending this Court's final determination on the issue of arbitrability.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Leave to Conduct Limited Discovery on Arbitrability and for Stay, and adopt the proposed scheduling framework set forth above. A complete, fully synchronized record is required before this Court can strip a North Carolina citizen of his constitutional right to a jury trial. Proceeding under this bounded framework ensures the Court decides the gateway question of its own authority on facts, rather than corporate speculation.

Respectfully submitted, this 26th day of August 2026.

**LAW OFFICES OF MICHELE JACKSON**
By: *<u>/s/ Michele Jackson</u>*
Michele Jackson
California State Bar No. 209841
*By Special Appearance*
17595 Harvard Avenue, Suite C628
Irvine, California 92614
Tel: 213-290-1512
jackson@michelejacksonattorney.com

**MAGINNIS HOWARD**
By: *<u>/s/ Christopher R. Bagley</u>*
Christopher R. Bagley
North Carolina State Bar No. 50567
7706 Six Forks Road, Suite 101

Raleigh, NC 27615
Tel: 919-526-0450
Fax: 919-882-8763
cbagley@carolinalaw.com

*Counsel for Plaintiff Dr. Robert D. Freedland, DDS, P.A.*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that the foregoing Plaintiff's Motion for Leave to Conduct Limited Discovery on Arbitrability for a Stay complies with the Court's word limit. Specifically, excluding the case caption, signature lines, and certificate of service, this brief contains 2837 words, as calculated using the word-count feature of the Microsoft Word, the word-processing software used to prepare it.

/s/ Michele Jackson
MICHELE JACKSON

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2026, the foregoing Motion for Leave to Conduct Limited Discovery on Arbitrability and for a Stay was filed through the Court's CM/ECF system and thereby served on all parties having entered an appearance in this matter.

/s/ Michele Jackson
MICHELE JACKSON