**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| DR. ROBERT D. FREEDLAND, DDS, P.A., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELAVON, INC. and PAYCHEX, INC.,<br><br>Defendants. | Case No. 1:26-cv-00717-DAB-JGM |

# DECLARATION OF ROBERT D. FREEDLAND IN SUPPORT OF PLAINTIFF'S MOTION FOR STAY AND FOR LEAVE TO CONDUCT LIMITED DISCOVERY ON ARBITRABILITY

I, Robert D. Freedland, declare as follows:

1. I am over the age of eighteen and am competent to testify to the matters set forth in this declaration. I have personal knowledge of the facts stated herein, except where stated on information and belief. If called as a witness I could and would testify competently to them.

2. I am a dentist and the principal of Dr. Robert D. Freedland, DDS, P.A., a dental practice located at 212 Highway 87 North, Riegelwood, North Carolina 28456. I make this declaration in that capacity and on behalf of the Plaintiff.

3. My practice began a credit-card payment processing relationship with a company I understood at the time to be Paychex in or around 2013 to 2014. I already had a longstanding relationship with Paychex, as it performed payroll processing for my business

first in or around 2004. When the same company I thought to be Paychex later offered me credit card processing at a competitive rate, I took them up on it.

4. Throughout that relationship, the monthly statements, correspondence, and customer service representatives I dealt with referred to “Elavon” and “Paychex” together or interchangeably. I did not understand Elavon, Inc. to be a corporation legally separate and distinct from Paychex, Inc. I understood myself to have a single payment processing relationship, not two.

5. In their motion to Compel Arbitration, Defendants contend that I executed a Company Application for Elavon’s payment-processing services (the "2017 Agreement"), which purported to incorporate Elavon’s then-current Terms of Service by reference to a URL. The url is not clickable on the form. Elavon never provided me with an actual, physical, or otherwise reasonably accessible copy of that Terms of Service. I had no meaningful or practical opportunity to review its contents, including the arbitration provision Defendants now seek to enforce. Looking at Defendants’ Exhibit 1, containing the TOS, I see it is a document with 54 pages. There is no mention of arbitration in the Table of Contents at all.

6. Defendants’ motion to compel arbitration also identifies a January 31, 2019 monthly billing statement as the vehicle by which Elavon purportedly amended the 2017 Agreement to add an arbitration clause. I did not *see*, read, or knowingly assent to this notice. The notice was not delivered separately or conspicuously; it appeared within routine billing information that I read only to see what total amount was due. I had no practice of reviewing statement blurbs line by line, embedded among fee itemizations. No change of term emails were sent to me. The 2019 notice says that continued use of the credit card processing services would

constitute acceptance of the terms in the notice, but even if I had seen that notice, I had no practical ability to stop taking patient payments by abruptly discontinuing the processing relationship without substantial disruption to my dental practice.

7. With their Motion to Compel Arbitration, Defendants submitted a document titled "Company Application" transmitted by DocuSign from the email address bwind@paychex.com on January 27, 2023. I reviewed this Company Application attached to the Motion to Compel Arbitration, but I never assented to the terms of any TOS.

8. The application Defendants submitted purports to incorporate a Terms of Service by reference through a hyperlink. In January 2023, when Defendants contend I signed the Company Application, I was not separately provided a paper or PDF copy of any Terms of Service at the time, and I did not see it. I did not click through to read the referenced Terms of Service before the date of the agreement, nor did I retain a copy. I did not assent to it. I did not enter an arbitration agreement with Elavon or Paychex.

9. When I have attempted to access that same hyperlink more recently, in July 2025, it displayed a version of the Terms of Service dated October 2023, well after the January 2023 contract date. And now, as of August 2026, the hyperlink displays a TOS dated November 2025. The link is not static. As a result, I have no way of knowing what version of the Terms of Service, if any, was posted at that web address on January 27, 2023.

10. Prior to January 27, 2023, I spoke to a Paychex Representative, Brendan Wind, about the high cost of the credit card processing fees. By this time, I had already been using Defendants credit card processing for more than 5 years. At no time in this period did

Brendan Wind or anyone at Paychex or Elavon discuss what PCI compliance was with me or inform me that I was being charged a penalty for failing PCI compliance.

11. On January 26, 2023, after our phone call, Paychex representative Brendan Wind emailed me and said he would conduct an analysis of my monthly statement and see where I was overpaying. A true and correct copy of the email I received from Brendan Wind is attached hereto and filed concurrently herewith as Exhibit "A." I gave him my statement for review, so that he could verify that I was not overpaying, before I continued the credit card processing services. At no time did he tell me that I was being charged a PCI compliance penalty. Later in 2023, when I was considering other credit card processing companies and comparing prices, I was going over my monthly credit-card processing statements and noticed for the first time that, beginning as far back as 2018, my monthly statements included a recurring charge described only as "Other Fees," in the combined amount of $94.99, without further breakdown or explanation appearing on the statement itself. I was paying this monthly "Other" fee unknowingly for some time. In fact, I had already paid approximately $3,000 in these mysterious "Other Fees" before I actually realized it and wondered what they were for.

12. When I called my Paychex account representative and inquired about these charges in 2023, I was told only that they related to "PCI compliance," but I was not given an explanation of the charges at that time. No one ever told me what PCI Compliance was, how it could be fulfilled or what I could do or fail to do to incur a PCI compliance charge.

13. In May 2023, I called the number on my monthly credit card processing statement, 1-800-725-1843. I then learned, to my surprise, that it was an Elavon number. I had always dealt

with Paychex for the credit card processing. I called this 800 number to get information about the "Other fees" charge and to ask about the agreement governing my account, so I could understand why I was being billed that fee. Elavon referred me to "the Paychex credit card department." When I called that department, I was told my inquiry would be forwarded to another department, which would call me back. On a subsequent call, I was told only that the matter was "in process." At no point during these calls was I told that Elavon and Paychex were separate, unrelated corporate entities, and I was not provided a copy of any signed agreement.

14. Since I had not heard from anyone at Elavon after my phone calls to the 800 number, I called Paychex, using a number I had for my Paychex representative. I asked what agreement governed my account which resulted in this "Other Fees" charge. On or about May 22, 2023, the Paychex representative said that Paychex had reviewed its own records and had no signed agreement for the PCI charges on file for my account, even though the agreement I purportedly signed in January 2023 was emailed by a Paychex representative.

15. On or around June 7 and 8, 2023, I exchanged emails with my new Paychex account representative, Jenn Wellman. Her email signature shows her title as Merchant Services Representative and her business address is the Paychex address in Rochester, New York. In that exchange, Ms. Wellman told me she could personally handle my PCI compliance survey so that there would be "absolutely no fees associated with PCI compliance." She did not tell me at that time that Elavon and Paychex were separate companies, and she did not tell me that any dispute between us would be subject to arbitration. A true and correct copy of the email I received from Ms. Wellman telling me that I would no longer be charged the fee is attached hereto and filed concurrently herewith as Exhibit "B."

16. Prior to noticing the recurring "Other Fees" charges on my statements in 2023, I had direct contact with no individuals who identified themselves to me as representatives of Elavon, Inc., as distinct and separate from Paychex. Every person I dealt with in connection with my account, during account setup, in ordinary customer-service calls, and afterward, identified themselves as being with Paychex.

17. At no time before or during this dispute did anyone discuss the concept of "PCI compliance," or any tasks I was required to perform to maintain such compliance, with me. No one ever gave me a checklist, a deadline, a questionnaire, a survey to complete, or any other clear description of what steps I needed to take to avoid the recurring fees.

18. When Ms. Wellman told me in June 2023 that she would personally complete my PCI compliance survey on my behalf, she did not explain to me what she actually did to bring my account into compliance, what specifically I had failed to do in the past that had caused the fees to be charged in the first place, or what I needed to do going forward to avoid similar fees in the future. I was simply told that the fees would stop.

19. The recurring "Other Fees" charges accumulated on my account for 2.5 years without any notice, explanation, or effort by either Elavon or Paychex to help me understand or resolve the underlying compliance issue. The charges stopped only after *I* raised the issue.

20. As a solo dental practice, I handle most of the day-to-day business operations of my practice myself, including reviewing correspondence and agreements from vendors such as Elavon and Paychex. I do not have dedicated legal or compliance staff who review payment-processing contracts.

21. No one I spoke to in any of my dealings with Paychex or the calls to the Elavon 800 number ever spoke to me about arbitration or notified me that my agreement with Paychex or Elavon would be subject to arbitration and I was never told what arbitration means to my legal rights. I was never given a copy of any arbitration rules referenced in any agreement, nor was I told which specific set or version of American Arbitration Association rules would apply to a dispute. If I had wanted to find out, I would have had to search for this information myself from a source other than the documents I was given.

22. My monthly billing statements throughout this period displayed the names "ELAVON" and "PAYCHEX" together on the same statement, which reinforced my understanding that I was dealing with Paychex, the company I had done business with all along and not just Elavon, a company with whom I'd never done business with directly. I was never told that there might be more than one agreement, for example, a separate Paychex Services Agreement and separate Elavon Terms of Service, each purporting to require arbitration in a different location or under different terms. I was certainly never given a copy of any such separate Paychex Services Agreement, and if such competing agreements exist, I had no way of knowing which one, if either, was intended to govern my account.

23. I changed credit card processors in April 2024, in part because of my ongoing frustration with these recurring, unexplained "Other Fees" charges. Though the charges had stopped, I felt that I had paid them in the past due to subterfuge, because they were not properly labeled on my billing statement. I believe the last month in which I was charged this "Other Fees" amount of $94.99 was on or about May 31, 2023, after I was told what the charges were and complained about them. Once I became aware of the charges, I took action so that I would no longer be billed for them. I no longer have all my monthly statements in

hand and at most would defer to the statements themselves, to the extent they can be located, as the best evidence of the precise dates and amounts charged.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 13th day of August, 2026, at Riegelwood, North Carolina.

Robert D. Freedland, DDS